FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 05, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA B.,[1]<br><br>                    Plaintiff,<br><br>        vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | No. 1:18-cv-03089-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

grants Plaintiff's Motion, ECF No. 15, and denies Defendant's Motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On August 26, 2014, Plaintiff protectively filed an application for supplemental security income benefits, alleging an amended onset date of August 26, 2014. Tr. 44, 176-83. The application was denied initially, Tr. 105-08, and on reconsideration, Tr. 118-24. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on January 10, 2017. Tr. 40-76. On April 24, 2017, the ALJ denied Plaintiff's claim. Tr. 14-39.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 26, 2014. Tr. 19. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, status-post total knee replacement; obesity; affective disorder; and anxiety disorder. Tr. 20. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr.

23.  The ALJ then concluded Plaintiff had the RFC to perform light work with the following limitations:

>  [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday, with normal breaks.  She can occasionally climb ramps and stairs, balance, stoop, bend, squat, kneel, and crouch.  [Plaintiff] can never crawl or climb ladders, ropes, and scaffolds.  She cannot have exposure to extremes of heat, cold, and humidity.  [Plaintiff] cannot have exposure to gases, dust, or other pulmonary irritants.  [Plaintiff] is able to perform the basic mental demands of competitive, remunerative, unskilled work, including the ability to understand, carry out, and remember simple instructions.  She can respond appropriately to supervision, coworkers, and usual work situations.  [Plaintiff] can deal with changes in a routine work setting.  She can have occasional contact with the general public.

Tr. 26.

At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 32.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as plumbing hardware assembler, mechanical assembler, electronic worker, addresser, machine stuffer, or printer circuit taper.  Tr. 33-34.  The ALJ concluded Plaintiff was not under a disability from August 26, 2014 through April 24, 2017, the date of the ALJ's decision.  Tr. 34.

On April 3, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ properly weighed the lay opinion evidence.

ECF No. 15 at 1.

## DISCUSSION

### A. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit her symptom testimony. ECF No. 15 at 15-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation

ORDER - 8

marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 27.

### 1. Lack of Supporting Medical Evidence

The ALJ found Plaintiff's symptom reports were inconsistent with the medical evidence. Tr. 27-28. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

### a. Physical Impairments

The ALJ observed that despite Plaintiff's allegations of limiting back pain, objective imaging and examinations of Plaintiff's back revealed mild to moderate findings. Tr. 21, 27; *see* Tr. 385 (July 2, 2014: imaging showed moderate degenerative changes at C6-7, slight spinal curvature, and no acute osseous abnormality of the lumbar spine); Tr. 341 (October 14, 2014: imaging showed six degree dextroscoliosis of lumbar spine and minimal to mild multilevel degenerative changes in lumbar spine); Tr. 884 (January 14, 2015: imaging showed mild degenerative disc change and facet arthrosis at L4-5 resulting in mild narrowing of the central canal encroachment on the lateral recesses); *see also* Tr. 483-84 (July 10, 2014: physical examination showed normal gait, normal heel-toe walk, and decreased range of motion); Tr. 829 (November 17, 2015: subjective spinal tenderness reported but physical examination otherwise normal).

The ALJ also observed that despite Plaintiff's allegations of disabling knee pain, the objective imaging and examinations of Plaintiff's knee showed normal findings following her knee surgeries. Tr. 21, 27; *see* Tr. 601 (December 4, 2014:

imaging of right knee showed mild tricompartmental arthritic change); Tr. 643 (December 16, 2014: physical examination showed mild swelling in knee, active painful range of motion, and decreased strength); Tr. 754 (January 14, 2015: imaging of right knee suggested large bucket handle/parrot break type tear involving lateral meniscus); Tr. 756 (April 23, 2015: Plaintiff underwent arthroscopic subtotal partial lateral menisectomy and debridement); Tr. 758 (May 6, 2015: very small effusion present, active range of motion of right knee with 0 to 115 degrees of flexion, knee ligamentously stable, and distal sensation, circulation, and movement intact); Tr. 749-50 (February 2, 2016: Plaintiff underwent right knee total replacement); Tr. 734 (April 14, 2016: mild swelling and pain, antalgic gait, normal alignment, reduced range of motion, full strength, and no atrophy in right knee); Tr. 728, 778 (May 24, 2016: imaging showed satisfactory position of knee prosthesis and no acute osseous abnormality or periprosthetic lucency); Tr. 726 (July 6, 2016: Plaintiff walked without a limp.  Physical examination of knee showed right knee was diffusely larger than left knee, but no effusion suspected, range of motion 5-110, collaterals stable and balanced, and demonstrated normal play in her left knee compared to right); Tr. 724 (September 15, 2016: walking without limp, right knee has range of motion from 5-110, collaterals balanced plus laxity); Tr. 720 (October 26, 2016: walking without limp, range of motion 5-110, collaterals stable and balanced plus laxity).  The ALJ further observed that despite

Plaintiff's testimony that she required a walker to ambulate, possibly indefinitely, Plaintiff's treatment records did not support this finding. Tr. 27; *compare* Tr. 58 (Plaintiff testified that she has used a walker since 2015 and may have to use it for the rest of her life) *with* Tr. 782 (September 7, 2016: Plaintiff was full weight bearing and did not require an assistive device).

Plaintiff challenges the ALJ's conclusion by identifying evidence, largely treatment notes preceding Plaintiff's surgeries, that Plaintiff contends supports Plaintiff's symptom complaints. ECF No. 15 at 16-17; *see, e.g.*, Tr. 766 (March 12, 2015: severe swelling and tenderness in knee and limited range of motion); Tr. 760 (April 15, 2015: ambulation with walker, antalgic gait, audible and palpable crepitus); Tr. 824 (December 30, 2015: unsteady gait and using walker). However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The evidence Plaintiff identifies does not undermine the substantial evidence supporting the ALJ's conclusion that the evidence of normal findings following Plaintiff's surgeries was inconsistent with her symptom testimony. Nevertheless, because this case is remanded for reconsideration of other evidence, the ALJ is

instructed to reconsider this finding on remand in light of any relevant testimony from a medical expert.

### b. Illiteracy

The ALJ observed that Plaintiff testified at the hearing that she was illiterate. Tr. 28; *see* Tr. 49. However, the ALJ noted that the record contained evidence of Plaintiff reading and completing worksheets and filling out her own disability forms. Tr. 28; *see* Tr. 220-27, 228-39, 283-859, 929, 944, 947, 950. The ALJ reasonably concluded that Plaintiff's self-reported illiteracy was inconsistent with documentation in the medical evidence.

### c. Mental Impairments

The ALJ found that the mental status examinations in the record did not support Plaintiff's allegations of disabling mental health impairments. Tr. 28; *see* Tr. 441 (October 20, 2014: oriented to time, place, person, and situation, appropriate mood and affect); Tr. 689-91 (March 25, 2015: alert and oriented to person, place, time, date, and situation; negative general behavior; able to concentrate and good attention span; affect labile and moves between being depressed to crying and being overly expressive; good impulse control; no illusions or hallucinations; memory intact; fair judgment; very poor insight; below average intelligence); Tr. 829 (November 17, 2015: oriented to time, place, person, and situation; appropriate mood and affect); Tr. 824 (December 30, 2015: oriented to

time, place, person, and situation; no suicidal ideation); Tr. 747 (January 18, 2016: oriented to time, place, person, and situation); Tr. 744-45 (January 21, 2016: oriented to time, place, person, and situation; appropriate mood and affect); Tr. 740 (February 17, 2016: same); Tr. 737 (March 17, 2016: same); Tr. 792, 795 (June 27, 2016: same; Plaintiff reported her depression was stable); Tr. 925 (August 18, 2016: restricted mood and flat affect, oriented to all spheres, normal thought process with intact associations, no suicidal or homicidal ideations, appropriate eye contact); Tr. 782 (September 7, 2016: oriented to time, place, person, and situation; appropriate mood and affect). However, the ALJ's discussion of the mental health medical evidence largely omits Plaintiff's therapy records, which consistently document abnormal mood and affect. Tr. 909-77. The ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). In citing portions of the record that show milder examination findings while the longitudinal record shows more mixed results, the ALJ's characterization of the record is not supported by substantial evidence.

The Commissioner asserts that any error the ALJ made in evaluating Plaintiff's symptom testimony is harmless. ECF No. 16 at 11. The Court "may

ORDER - 15

not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). Here, although the ALJ erred in evaluating the evidence surrounding Plaintiff's mental impairments, the ALJ made other findings about Plaintiff's testimony being inconsistent with the medical evidence that are supported by substantial evidence. However, the Court cannot conclude that the ALJ's error is inconsequential to the ultimately nondisability determination because the ALJ's selective discussion of the mental impairment evidence also informed the ALJ's evaluation of several medical opinions. Tr. 29-31. Furthermore, inconsistency with the medical evidence cannot stand alone as a reason to discredit a claimant's symptom testimony. *See Rollins*, 261 F.3d at 857. As discussed *infra*, the other reasons the ALJ provided to discredit Plaintiff's symptom testimony are not supported by substantial evidence. The ALJ's error is not harmless. The ALJ is instructed to reconsider the evidence of Plaintiff's mental impairments on remand and to take testimony from a medical expert.

### 2. *Daily Activities*

The ALJ found Plaintiff's symptom reports were inconsistent with her daily activities. Tr. 27. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial

part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found Plaintiff's daily activities were inconsistent with her alleged limitations. Tr. 27. The ALJ observed Plaintiff completed a function report indicating she was independent in personal care except for shaving, that she could do laundry and vacuuming but needed assistance with heavier chores, that she could drive and grocery shop, that she could not balance a checkbook but could otherwise manage money, that she spoke with a friend on a daily basis and visited her friend once per week, that she did not have problems getting along with others, that she could pay attention for an hour at a time, and that she had trouble following instructions. Tr. 25; *see* Tr. 220-25. The ALJ also observed that Plaintiff reported performing personal care independently to a consultative examiner, but that she needed some help getting in and out of the bathtub. Tr. 25; *see* Tr. 688. However, the ALJ failed to explain with any specificity how these

modest activities were either inconsistent with Plaintiff's symptom testimony or transferrable to a work setting. *Molina*, 674 F.3d at 1112-13. Without further explanation of the ALJ's reasoning, this finding is not supported by substantial evidence.

### 3. Work History

The ALJ considered Plaintiff's sporadic work history in assessing the reasons for her current absence from the workforce. Tr. 32. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that she is unable to work. *Thomas*, 278 F.3d at 959; SSR 96-7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 416.929(c)(3) (work record can be considered in assessing credibility). *Thomas* specifically approved of an ALJ rejecting a claimant's credibility when the claimant's "extremely poor work history" reflecting "little propensity to work in her lifetime" – i.e., where a claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability." *Thomas*, 278 F.3d at 959.

Here, the ALJ observed that Plaintiff had never engaged in substantial gainful activity (SGA) and had "only a sporadic history of attachment to the workforce." Tr. 32. The ALJ continued, "I consider this circumstance as I assess

the reasons for her current absence from the workforce." Tr. 32. Here, the record reflects Plaintiff received disability benefits from approximately 1993 through 2006 or 2008, and her benefits were discontinued in 2006 or 2008 because her husband's income was too high for her to receive benefits. Tr. 47-48, 686. The ALJ noted that he considered Plaintiff's minimal work history in assessing her claim but did not explain how he considered this information. Tr. 32. To the extent the ALJ considered this history as evidence that Plaintiff was not motivated to work, therefore making her symptom testimony less credible, this finding was error. Plaintiff's extended receipt of disability benefits suggests she was unable to work, not that she was not motivated to work.

Because the ALJ failed to provide clear and convincing reason supported by substantial evidence to discredit Plaintiff's symptom testimony, the ALJ is instructed to reconsider Plaintiff's symptom testimony on remand.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Greg Sawyer, Ph.D., M.D.; P. David Wood, PA-C; Jose Diaz, PA-C; Dave Hulslander, M.S.; and Rebecca Palmer Overmiller, M.S.W. ECF No. 15 at 4-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan,* 246 F.3d at 1201-02 (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831).

*1. Mr. Hulslander*

Mr. Hulslander, a treating therapist, opined on October 6, 2016, that Plaintiff had mild limitation in her ability to remember locations and work-like procedures; moderate limitation in her ability to understand and remember detailed instructions; moderate limitation in her ability to maintain attention and concentration for extended periods; moderate limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; that Plaintiff would be off-task during 21-30% of a 40-hour workweek; and that Plaintiff would miss one day of work per month if she were attempting to work a 40-hour schedule. Tr. 701-03. The ALJ gave this opinion little weight. Tr. 29. As a therapist, Mr. Hulslander is a non-acceptable medical source. 20 C.F.R. § 416.902 (2017) (acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. § 416.927(f). An ALJ may reject the opinion of a non-

acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

First, the ALJ found Mr. Hulslander's opinion was entitled to less weight because it was inconsistent with the objective medical evidence. Tr. 29. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports). The ALJ found that the mental status examinations in the record were inconsistent with Mr. Hulslander's opined limitations. Tr. 29; *see* Tr. 441 (October 20, 2014: oriented to time, place, person, and situation, appropriate mood and affect); Tr. 689-91 (March 25, 2015: alert and oriented to person, place, time, date, and situation; negative general behavior; able to concentrate and good attention span; affect labile and moves between being depressed to crying and being overly expressive; good impulse control; no illusions or hallucinations; memory intact; fair judgment; very poor insight; below average intelligence); Tr. 829 (November 17, 2015: oriented to time, place, person, and situation; appropriate mood and affect); Tr. 824 (December 30, 2015: oriented to time, place, person, and situation; no suicidal ideation); Tr. 747 (January 18, 2016: oriented to time, place, person, and situation); Tr. 744-45 (January 21, 2016: oriented to time, place, person, and situation; appropriate mood and affect); Tr. 740

(February 17, 2016: same); Tr. 737 (March 17, 2016: same); Tr. 792, 795 (June 27,

2016: same; Plaintiff reported her depression was stable); Tr. 925 (August 18,

2016: restricted mood and flat affect, oriented to all spheres, normal thought

process with intact associations, no suicidal or homicidal ideations, appropriate eye

contact); Tr. 782 (September 7, 2016: oriented to time, place, person, and situation;

appropriate mood and affect).  However, as discussed *supra*, the ALJ's discussion

of the mental health evidence largely omits Plaintiff's therapy records, including

Mr. Hulslander's treatment notes, which consistently document abnormal mood

and affect.  Tr. 909-77.  The ALJ must consider all of the relevant evidence in the

record and may not point to only those portions of the records that bolster his

findings.  *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot

selectively rely on some entries in plaintiff's records while ignoring others).  In

citing portions of the record that show milder examination findings while the

longitudinal record shows more mixed results, the ALJ's characterization of the

record is not supported by substantial evidence.  This was not a germane reason to

reject Mr. Hulslander's opinion.

Second, the ALJ found Mr. Hulslander's opinion was entitled to less weight

because Mr. Hulslander did not appear to have a treating relationship with

Plaintiff.  Tr. 29.  An ALJ is permitted to consider the length and nature of a

treatment relationship in evaluating the opinions of "other sources."  SSR 06-03P,

*available at* 2006 WL 2329939 at *4 (Aug. 9, 2006), *see also Koenig v. Colvin*,

No. CV-13-0412-FVS, 2014 WL 5781764, at *11 (E.D. Wash. Nov. 6, 2014).

However, here the ALJ omitted Mr. Hulslander's treatment notes from the

discussion of the medical evidence. The record shows Mr. Hulslander provided

therapy to Plaintiff from June 29, 2015 through September 15, 2016. Tr. 924-74.

Thus, the ALJ's conclusion that Mr. Hulslander did not have a treating relationship

with Plaintiff is not supported by substantial evidence.

Third, the ALJ found Mr. Hulslander's opinion was entitled to less weight

because Mr. Hulslander was not an acceptable medical source. Tr. 29. Although

an individual's status as a medically acceptable source may impact the amount of

deference the ALJ gives to an opinion, the ALJ may not reject an opinion as to a

claimant's limitations because the opinion comes from a non-acceptable medical

source. 20 C.F.R. § 416.927. Even if the ALJ correctly observed that Mr.

Hulslander is not an acceptable medical source, this finding alone does not provide

substantial evidence in light of this record to give less weight to his opinion.

Overall, the ALJ failed to provide germane reasons, supported by substantial

evidence, to discredit Mr. Hulslander's opinion.[2]  This case is remanded for the

ALJ to reconsider Mr. Hulslander's opinion.

### 2. *Mr. Wood*

Mr. Wood, a treating physician's assistant, rendered three opinions.  On June

4, 2014, Mr. Wood opined Plaintiff's shoulder pain rendered her unable to

participate in work, that Plaintiff was unable to lift at least two pounds or unable to

stand or walk, that Plaintiff had no use of her left arm, and that Plaintiff's treatment

plan was to recover from surgery.  Tr. 1018-20.  On December 17, 2014, Mr.

Wood opined Plaintiff's chronic lumbago, knee pain, and shoulder pain rendered

her unable to work at all and that Plaintiff was unable to lift at least two pounds or

unable to stand or walk.  Tr. 1034-36.  On May 20, 2015, Mr. Wood opined

Plaintiff's impairments would cause her to need to lie down for one to two hours

---

[2] The Commissioner repeatedly asserts the ALJ rejected several medical opinions,

including Mr. Hulslander's, for being rendered on a check-box form.  ECF No. 16

at 14-17.  However, the ALJ made no findings regarding the check-box format of

the reports.  Tr. 29-32.  The Court is constrained to affirming the ALJ's decision

on a ground that the ALJ invoked in making his decision.  *See Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007); *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050,

1054 (9th Cir. 2006).

per day, that Plaintiff's prognosis was poor, that regular and continuous work would cause Plaintiff's condition to deteriorate, and that Plaintiff would miss four or more days of work per month due to needing multiple medical appointments and recovery time. Tr. 270-71. The ALJ gave these opinions little weight. Tr. 30. As a physician's assistant, Mr. Wood is not an acceptable medical source. 20 C.F.R. § 416.902(a)(8) (2017) (including licensed physician's assistants as acceptable medical sources for impairments within their licensed scope of practice "only with respect to claims filed . . . on or after March 27, 2017"). Therefore, the ALJ was required to provide germane reason to reject Mr. Wood's opinion. *Ghanim*, 763 F.3d at 1161.

First, the ALJ concluded that Mr. Wood's opinion was entitled to less weight because the ALJ found it was based on Plaintiff's exaggerated claim. Tr. 30. The ALJ may reject lay testimony that essentially reproduces the claimant's discredited testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Here, the ALJ concluded that Mr. Wood had no basis to opine that Plaintiff's limitations began in 2009, and therefore found that Mr. Wood either improperly tailored his opinion to correspond to Plaintiff's alleged onset date or

was based on an exaggerated report by Plaintiff.[3]  Tr. 30.  The ALJ's conclusion is faulty for several reasons.  First, Mr. Wood's own report indicates that he began treating Plaintiff in 2009, thus providing the basis for an opinion on impairments dating back to 2009.  Tr. 270.  Second, Plaintiff's original alleged onset date was 1993, which was amended to 2014 at the hearing in January 2017.  Tr. 44.  There is therefore no reason in the record to assume that an opinion dating back to 2009 was "inappropriately tailored" to meet Plaintiff's onset date.  *See* Tr. 30.  Third, as discussed *supra*, the ALJ failed to provide clear and convincing reason to discredit Plaintiff's symptom testimony.  Therefore, reliance on Plaintiff's self-report does not provide basis to reject Mr. Wood's opinion.  This was not a germane reason to discredit Mr. Wood's opinion.

---

[3] The ALJ's language here is unclear.  From the context, it appears as though the use of the word "her" could be a typographical error, which was meant to refer to Mr. Wood.  If the ALJ intended to express a conclusion that Mr. Wood exaggerated the nature of his treatment relationship with Plaintiff by inaccurately claiming Mr. Wood had treated Plaintiff since 2009, such a conclusion is similarly not supported.  There is no basis in the record to assume Mr. Wood misrepresented the length of his treatment relationship with Plaintiff.

Second, the ALJ concluded that Mr. Wood's opinion was entitled to less weight because Mr. Wood is not an acceptable medical source. Tr. 30. Although an individual's status as a medically acceptable source may impact the amount of deference the ALJ gives to an opinion, the ALJ may not reject an opinion as to a claimant's limitations because the opinion comes from a non-acceptable medical source. 20 C.F.R. § 416.927. Even if the ALJ correctly observed that Mr. Wood is not an acceptable medical source, this finding alone does not provide substantial evidence in light of this record to give less weight to his opinion.

Third, the ALJ concluded that Mr. Wood's opinion was entitled to less weight because it was an opinion on an issue reserved to the Commissioner. Tr. 30. Opinions on the ultimate issue of disability are an issue reserved to the Commissioner. 20 C.F.R. § 416.927(d); *see also Wickramasekera v. Astrue*, No. CV 09-449-TUC-HCE, 2010 WL 3883241, at *34 (D. Ariz. Sept. 29, 2010) (applying regulation to lay witness testimony). Here, although Mr. Wood rendered opinions that Plaintiff was unable to work, Mr. Wood also rendered opinions on certain specific functional limitations Plaintiff experienced. Tr. 270-71, 1018-20, 1034-36. While this may have been a germane reason to decline to give weight to Mr. Wood's opinion on the ultimate issue of disability, this was not a germane reason to reject the specific functional limitations Mr. Wood opined.

Finally, the ALJ concluded that Mr. Wood's opinion was entitled to less weight because it was not supported by the record. Tr. 30. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511-12. Here, the ALJ found Mr. Wood's opinion was inconsistent with the longitudinal medical evidence. Tr. 30. However, as discussed *supra*, the ALJ is instructed to reconsider the medical evidence on remand. Additionally, the ALJ concluded that there was no basis in the record for Mr. Wood to opined Plaintiff would miss four days of work per month for medical appointments, since Plaintiff could schedule appointments around work hours or schedule multiple appointments in one day. *Id.* The ALJ's reasoning here is speculative. Mr. Wood opined Plaintiff would miss four days of work per month due to a combination of multiple medical appointments and recovery time. Tr. 271. There is no basis in the record to assume that Plaintiff's need to schedule appointments and recovery time could be pre-planned to occur around work hours or on the same day. This was not a germane reason to reject Mr. Wood's opinions.

Overall, the ALJ failed to provide germane reason, supported by substantial evidence, to discredit Mr. Wood's opinion. The ALJ is instructed to reconsider this evidence on remand.

*3. Other Assignments of Error*

Plaintiff challenges the ALJ's evaluation of several other medical opinions. ECF No. 15 at 6-15. Because this case is remanded for the ALJ to reconsider the medical opinion evidence, the Court declines to address Plaintiff's other specific assignments of error. The Court notes that several of the errors identified *supra*, including an incomplete consideration of the medical evidence and rejection of opinions for being rendered by non-acceptable medical sources, were applied to other medical opinions in the record. Tr. 29-32. The ALJ is instructed to reconsider the medical evidence, take testimony from a medical expert, and reevaluate all of the medical opinion evidence on remand.

**C. Lay Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of lay opinion evidence from Plaintiff's husband, Michael B.[4] ECF No. 15 at 20.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. § 416.913(a)(4); *see also Dodrill v. Shalala*, 12

---

[4] Plaintiff's husband's last name is omitted to protect Plaintiff's privacy.

F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Mr. B. submitted a third party function report describing Plaintiff's back, should, neck, and headache pain; and describing Plaintiff's daily activities to include talking with friends and family, watching television, reading romance novels, helping with some housework, driving her daughter to and from school and activities, sometimes feeding the dogs, sleeping restlessly, having no limitations in personal care, preparing simple meals three to four times per month, doing laundry with reminders, needing reminders daily, shopping daily, and being unable to sit for extended periods due to pain. Tr. 240-46. The ALJ gave this opinion little weight. Tr. 31. Because Mr. B. is a lay source, the ALJ was required to provide germane reason to reject this opinion. *Nguyen*, 100 F.3d at 1467.

First, the ALJ found Mr. B.'s opinion was entitled to less weight because it was based on casual observation. Tr. 31. "[M]edical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." *Nguyen*, 100 F.3d at 1467. However, lay testimony "as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence." *Id.*

(emphasis in original). Here, Mr. B.'s opinion does not give a medical diagnosis, but rather describes Plaintiff's daily functioning and her activities at home. Tr. 240-46. This is exactly the kind of lay observation that makes for competent evidence. *Nguyen*, 100 F.3d at 1467. That Mr. B.'s opinion was based on casual observation, not medical training, is not a germane reason to discredit his opinion.

Second, the ALJ found Mr. B.'s opinion was entitled to less weight because it was inconsistent with the medical evidence. Tr. 31. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511-12 (germane reasons include inconsistency with medical evidence, activities, and reports). However, as discussed throughout this opinion, the ALJ's interpretation of the medical evidence is not supported by substantial evidence. Therefore, the ALJ's finding that Mr. B.'s opinion was inconsistent with that evidence is similarly not supported by substantial evidence.

The ALJ failed to provide germane reason to discredit Mr. B.'s lay opinion. The ALJ is instructed to reconsider this evidence on remand.

**D. Remedy**

Plaintiff urges this Court to fully credit the challenged evidence in this case. ECF No. 15 at 4-20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a

whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary. Even if the Court were to fully credit the challenged opinion evidence, as Plaintiff requests, the record would still present outstanding conflicts to resolve. Even if the Court were to fully credit every opinion in the record stating Plaintiff is incapable of work, the record contains other opinions from Dr. Arcega, Tr. 84-85, Dr. Hale, Tr. 97-98, and Dr. Bailey, Tr. 98-100, who opined Plaintiff had functional limitations consistent with light work. Therefore, the ALJ must resolve conflicts in the medical evidence on remand. The ALJ is instructed to take testimony from a medical expert, reconsider the medical evidence, reweigh Plaintiff's symptom allegations, reweigh the medical opinion evidence, reweigh the lay opinion evidence, and conduct a new sequential analysis.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 5, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE